## Kilpatrick *versus* The Penrose Ferry Bridge Co.
## Serrill *versus* The Same.

*Liability of corporations for compensation of officer.*

Corporations are not liable on a *quantum meruit* for services performed by their officers.  There must be an express contract for compensation, or there can be no recovery.

ERROR to the District Court of *Philadelphia.*

These were actions of *assumpsit,* by Samuel Kilpatrick and by Pearson Serrill, against The Penrose Ferry Bridge Company, to recover compensation or salary for services rendered as president and treasurer respectively of said company, in which the plaintiffs were shareholders.

In 1853 the company was chartered to construct a bridge over the river Schuylkill, a short distance above the mouth of the river.  Mr. Serrill was elected president in June 1859, and served until February 1864.  Mr. Kilpatrick was elected treasurer in June 1859, and served until some time in 1864.

The corporation was made subject to the provisions of the 1st, 2d, 3d, 4th, 5th, 7th, 8th, 9th, 10th, and 20th sections of the General Law regulating Turnpike and Plank Road Companies, passed January 26th 1849 : Pamph. Laws of 1849, p. 10 ; but neither by the charter nor by the General Law (to certain sections of which they are declared to be subject), nor by any by-law, minute, or resolution of the managers or of the stockholders was there any stipulation or provision made for the payment of any compensation to any officer of the company for services rendered to the company in their respective offices.

By the 3d section of the General Law aforesaid, the officers

[Kilpatrick *v.* Penrose Ferry Bridge Co.]

are to consist of " one president, five managers, one treasurer, and such other officers as may be necessary to conduct the business of such company."

The bridge which the company was authorized to construct and did construct, was an unprofitable investment for the shareholders; no dividends were ever paid, and it was finally sold to the city of Philadelphia at a very large sacrifice below its cost, in the year 1864.

The evidence proved the faithful performance by these officers of their respective duties, the erection of the bridge under their supervision, and that their services were reasonably worth from $350 to $500 per annum.

But as no express contract with the company for compensation was proven, the court ordered a nonsuit on the ground that the plaintiffs being shareholders of the corporation defendant, they could not recover without proof of an express contract with the company.

The present writs of error were brought to review the action of the court below, in entering the judgment of nonsuit on this ground.

*J. S. Serrill* and *Charles E. Lex*, for plaintiffs in error.—It is true that in the case of the Loan Association *v.* Stonemetz, 5 Casey 534, it was decided that a director elected to serve without compensation cannot recover against the company for services rendered; yet it is submitted the case now presented differs widely from it in all its features. There the services performed were of a character incumbent upon every director; here it is for compensation to officers selected to manage its affairs, and discharge executive duties imposed upon them.

The president and managers constitute the board of managers, the treasurer forming no part of the board, and, so far as he is concerned, need not be a stockholder, since he has no power except as an agent of the board in the receipt and disbursement of moneys.

No one can doubt from the evidence that as an executive officer the president, Mr. Serrill, was charged with carrying out the views of the board; nor was he, as in the case of Loan Association *v.* Stonemetz, a mere director advising as to the mode in which the business of the company was transacted, but charged with their performance. The evidence shows that his services deserved compensation. The company were engaged in building a bridge; it involved extensive litigation, the raising of money, and constant supervision of the structure.

These remarks apply with greater force to the case of Mr. Kilpatrick, the treasurer; he was no member of the board, and had no voice in their deliberations; but, as secretary and treasu-

[Kilpatrick *v.* Penrose Ferry Bridge Co.]

rer, was a mere executive officer. It was proved that he had to raise money; that the company met at an office for which he was paying rent, and that he had devoted a great deal of time to the duties of his office, involving the supervision of the building of the bridge. A stranger not a stockholder could have been elected; and there seems to be no reason why the company should not pay for services thus rendered.

In Bradford *v.* Brace, 3 Johns. Ch. Rep. 431, it is held that when several partners delegate the business of the firm to a third partner, the latter can recover on an implied *assumpsit*. That case seems to be like the present, and decides that an executive officer should be paid for his services. In Loan Association *v.* Stonemetz, the services performed were merely ordinary, and that distinguishes it from the present case.

*J. B. Townsend,* for defendants in error.—These cases raise one and the same question: Can an officer of a joint stock company, chartered under the laws of Pennsylvania (the officer himself being a shareholder and rendering his services without any stipulation for compensation), claim and recover compensation for the discharge of his official duties upon an implied promise that the company will pay for them?

It is undoubtedly the general rule and understanding, that where officers of companies are to receive salaries or compensation, it is so stipulated when the selection is made, or the office created. See Dunstan *v.* Imperial Gas Company, 3 B. & Ad. 135; 23 Eng. Com. Law Rep. 42; The York and North Midland Railway Company *v.* Hudson, 16 Beav. 485; Evans *v.* Coventry, 2 Jur. N. S. 557.

A surviving or liquidating partner cannot charge for care and services which he renders in respect to the settlement of the firm property, because he is working for his own as well as his partner's interest; and yet his claim is as meritorious as that of an officer of a corporation, who, being a shareholder, labours for the benefit of all the joint owners.

The case of Bradford *v.* Kimberly & Brace, 3 Johns. Ch. Rep. 431, cited by the plaintiffs in error, does not militate against this rule. The facts of that case were peculiar.

If the president and secretary of a corporation, without an express contract, can claim a salary for their services, then why not the directors? the services of the latter will only differ in quantity and not in quality. It is expressly proved in this case that all of the directors assisted in the labour of carrying the bridge through to completion, and in raising the necessary funds to pay for the work. And if the officers of such a corporation as the present can rely on an implied assumption to pay for the discharge of their official duties, then why may not the officers

[Kilpatrick *v.* Penrose Ferry Bridge Co.]

of a charitable, religious, or beneficial corporation sustain a similar claim for their services.

Our own case of Loan Association *v.* Stonemetz, 5 Casey 534, is an exposition of the law of Pennsylvania upon the question, and is submitted as conclusive against the plaintiffs' right to maintain their claim.

The opinion of the court was delivered, February 27th 1865, by WOODWARD, C. J.—Mr. Serrill was elected president and Mr. Kilpatrick treasurer of the bridge company in June 1859, and served in their respective offices until February 1864. The evidence proved a faithful performance by these officers of their respective duties, and that their services were reasonably worth from $350 to $500 per annum, but no express contract for compensation was proved. After the company had sold its bridge to the city, at a loss to the stockholders, these actions were brought, and the question, the same in each case, was, whether the plaintiff could recover on a *quantum meruit.*

The salary or compensation of corporate officers is usually fixed by a by-law or by a resolution either of the directors or stockholders, but where no salary has been fixed none can be recovered. Corporate offices are usually filled by the chief promoters of the corporation, whose interest in the stock or in other incidental advantages is supposed to be a motive for executing the duties of the office without compensation, and this presumption prevails until overcome by an express prearrangement of salary. Hence we held in the Loan Association *v.* Stonemetz, 5 Casey 534, as a general principle, that a director of a corporation elected to serve without compensation could not recover in an action against the company for services rendered in that capacity, though a subsequent resolution of the board agreeing to pay him for the past services was shown.

So in Dunston *v.* The Imperial Gas Company, 3 B. & Ald. 135, a resolution formally adopted allowing directors a certain compensation for attending on courts, &c., was held insufficient to give a director a right to recover for such services.

And the rule is just as applicable to presidents and treasurers or other officers as to directors. In The Commonwealth Insurance Company *v.* Crane, 6 Metcalf 64, the company had passed a vote fixing the salary of its president at a certain sum per annum, but when another president was subsequently elected, and he claimed the same salary, it was held that his claim did not stand on the footing of a written agreement, and that circumstances might be shown to raise the implication that he expected to serve without compensation.

It is well that the rule of law is so. Corporate officers have ample opportunities to adjust and fix their compensation before

they render their services, and no great mischief is likely to result from compelling them to do so. But if, on the other hand, actions are to be maintained by corporate officers for services, which, however faithful and valuable, were not rendered on the foot of an express contract, there would be no limitation to corporate liabilities, and stockholders would be devoured by officers.

It was argued that the case of Bradford *v.* Kimberly, 3 Johns. Ch. Cas. 431, contains the principles on which these actions ought to have been sustained, but we do not think so. Several joint owners of a vessel and cargo appointed one of their number to receive and sell the cargo and distribute the proceeds, and it was held that he was entitled, under such special agency, to a commission or compensation for his services, as factor or agent, in the same manner as a stranger would have been. Such was that case; and the doctrine was nothing more than that partners could constitute one of their number the factor or special agent of the whole for a single mercantile transaction. The right of compensation, and the right to retain the goods as security for his compensation, resulted out of the defendant's character of factor or agent, and the case was decided when one partner was declared capable of being made, by special appointment, the factor of the rest. But corporations are not partnerships, and corporate officers are not factors. In a word, the mercantile law is not corporation law. Corporations stand upon their charters, and although their officers are in a certain sense agents of the stockholders, they are also trustees whose rights and powers are regulated by law. That they may not consume that which they are appointed to preserve, their compensation must be expressly appointed before it can be recovered by action at law.

The judgment in each of the above cases is affirmed.