## Chambers, Appellant, *v.* Beaver-Advance Corporation.

482

Argued October 9, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

C. *Barrickman,* with him *Keller & Luxenberg* and *Wallover and Barrickman,* for appellant.

*Joseph R. McFate,* with him *Caldwell and McFate* and *McFate and Rea,* for appellee.

OPINION BY MR. JUSTICE BELL, May 2, 1958:

The question raised in this appeal involves the validity of a bonus under the particular facts of this case.

Appellant, who is a director and the owner of 43% of the corporation stock, brought a complaint in equity against the corporation and the other two directors and stockholders (a) to restrain them from paying additional compensation in the nature of a bonus for services rendered by them as president and secretary respectively for the year 1956, and (b) to restrain them from paying any other officer of the defendant corporation any sum of money by way of bonus, and (c) to restrain them from purchasing the West Coast Distributorship from the Mathews Conveyor Company* and (d) to restrain them from erecting any addition to the plant.* The lower Court, after hearing testimony and argument, found that the salaries and bonuses were *reasonable* and that there was no fraud, bad faith or wasting of corporation assets; and dismissed plaintiff's complaint.

Beaver-Advance Corporation was organized under the laws of the Commonwealth of Pennsylvania and is engaged in the business of the manufacturing of materials and equipment used in the process of heat treating and fabrication of metals, as well as the making and construction of scaffolding materials. The principal office and place of business of the Company is on Factory Avenue in Ellwood City, Lawrence County, Pennsylvania.

The business and affairs of the corporation, according to its by-laws, are to be conducted by three directors. The present directors are Ralph W. McGrew and Ronald G. Morris, who are the two individual

---

* These questions were abandoned in this appeal.

appellees, and the appellant, Philip Chambers. Appellant states that according to the balance sheet and financial statements submitted at the trial, the company has grown substantially in assets and has enjoyed a lucrative income, although no dividends have been declared for a period of many years.

At a special meeting of the board of directors held on August 9, 1950, it was resolved that additional compensation be paid to C. F. Maroney, D. I. Weisz and R. W. McGrew for the fiscal year ending October 31, 1950. They owned almost all the stock of the corporation and were actively engaged in its operation and management. Incorporated in the resolution was provision for future compensation of these individuals based on a percentage of the (net) income of the corporation generally as follows: 1% for the fiscal year ending October 31, 1950; 2% for the fiscal year ending October 31, 1951; 3% for the fiscal year ending October 31, 1952; 4% for the fiscal year ending October 31, 1953, and 5% for the fiscal year ending October 31, 1954, and subsequent fiscal years.

The terms of the resolution have been followed substantially in governing the amount of additional compensation paid, and the additional compensation has been referred to from time to times as bonuses. There never was any *formal* ratification of these bonuses by the stockholders until 1953.

On December 21, 1953, the stockholders formally passed the following resolution: "Resolved: That all of the actions of the Board of Directors and officers of Beaver Art Metal Corporation for and during the period from November 1, 1952 to the present date are hereby ratified, affirmed and approved by the stockholders."

The appellant became a stockholder in the corporation on August 9, 1954, by the purchase of 16,400

shares, amounting to 43% of the stock of the corporation. *In 1954 appellant as a director* approved the payment of this "additional compensation in the way of bonuses."

On December 19, 1955, all of the stockholders, with the exception of the appellant, voted in favor of the following resolution: "Resolved: That all the actions of the Board of Directors and officers of Beaver-Advance Corporation for and during the period of November 1, 1954 to the present date are hereby ratified, affirmed, and approved by the stockholders." Appellant objected at that meeting and at the meeting of the directors to the payment of any additional compensation by a bonus.

At a meeting of the board of directors on November 29, 1956, the following resolution was passed: "Resolved: That bonuses be paid during December 1956 to the three officers of Beaver-Advance Corporation based on income for the fiscal year ending October 31, 1956. The bonuses are to represent additional compensation for services rendered the company during the fiscal year ending October 31, 1956 and are to be accrued upon the books as of October 31, 1956. The rates of the bonuses and the basis and method of calculation are to be the same as those employed in computing the bonuses for the years ending October 31, 1953, October 31, 1954 and October 31, 1955. The said resolution was adopted on the following vote: Philip Chambers voted 'no'. R. W. McGrew voted 'yes'. R. G. Morris voted 'yes'."

All acts of the board of directors for the year 1956 were ratified by a majority of the stockholders at the annual stockholders' meeting on December 17, 1956, with the exception that bonuses which had been voted by the board of directors to the officers could not be

ratified because they were restrained by court order pending the outcome of the present litigation.

Beaver-Advance Corporation paid relatively small salaries considering the gross amount of business transacted by the corporation. In addition to the bonus paid annually to McGrew, Morris and Weisz, the company paid a bonus annually to every other salaried officer* of the corporation, based in each case on the value of his services to the corporation during the year in question.

The Business Corporation Law of May 5, 1933, P. L. 364, Article 4, §408 (15 PS §2852-408) provides as follows: "Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in their personal business affairs."

The general rule is well established that stockholders can ratify any action of the board of directors which they themselves could have lawfully authorized: *Russell v. Patterson Co.*, 232 Pa. 113, 120, 81 A. 136; *Lowman v. Pierce Co.*, 276 Pa. 382, 120 A. 404. This general rule is "subject, however, to the limitation . . . 'the majority stockholder may not, as against the corporation and minority stockholder, dissipate or waste its funds, or fraudulently dispose of them in any way, either by ratifying the action of the board of directors in voting themselves illegal salaries, or by any other act.' ": *Lowman v. Pierce Co.*, 276 Pa. 382, 386.

In regard to the particular question involved in the instant case, the *Russell* case is most pertinent.

---

* Except officers in the sales department who received commissions in addition to their salary.

A board of directors increased the salary of two of its members. Without the votes of the two directors the resolution would not have passed. A majority of the stockholders ratified (over the protest and vote of the minority stockholder) the action of the board of directors, but again the ratification resolution would not have passed without the vote of the two directors who were likewise stockholders. This Court held that the act of the board of directors was *voidable*, and the ratification thereof by a majority of the stockholders was valid and binding. The Court in its opinion said (pages 121-123):

"We are of opinion that *the resolution of the stockholders ratifying the action of the directors in increasing the salaries was not invalid because it was done by the votes of the same individuals by whose votes the resolution of the board of directors was passed and two of whom were the recipients of the salaries.* At the meeting of the board, the voting was done by the directors as agents of the corporation, occupying a fiduciary relation to the corporation which prevented them contracting with their principal or voting themselves compensation for their services. When these directors voted as stockholders, in a stockholders' meeting, they held no trust relation to the company which would deprive them of the right to vote as their interests dictated. As shareholders they, like other owners of the stock, had a voting capacity to the extent of the number of shares they held in the corporation. The right to vote their shares was a privilege of which they could not be deprived. While the majority stockholders may not use their voting power to defraud the minority stockholders, yet they have the right to protect their own interests in the stock by voting as they deem best in the stockholders' meeting.

*This might, as it did in the case in hand, result in sustaining them in obtaining a salary from the corporation.* . . . Each stockholder had a right to vote in the shareholders' meeting as he thought best to protect his own individual interest. Such interest would naturally and necessarily influence him in voting, but it would not deprive him of the right to vote on the ratification of the action of the directors. *To hold otherwise, would be to permit a minority stockholder to control the majority stockholders and their property.* This cannot be done. The majority stockholders may not as against the corporation and a minority stockholder dissipate or waste its funds or fraudulently dispose of them in any way, either by ratifying the action of the board of directors in voting themselves illegal salaries or by any other act. But where the action of the board of directors is not fraudulent or unfair to the extent of amounting to fraud and the action of the directors may be ratified by the shareholders, the well-settled general rule is that the stock of the director who is benefited is to be counted, even though the vote would have failed had his stock not been voted: 2 Cook on Corp., sec. 662; Booth v. Land, etc., Co., 68 N.J. Eq. 536; Bjorngaard v. Goodhue County Bank, 49 Minn. 483; United States Rolling Stock Co. vs. Railroad Co., 34 Ohio, 450, 32 Am. Rep. 380; Foss v. Harbottle, 2 Hare 461; Beatty v. Northwest Transportation Co., 5 Can. L.T. 277; Middleton v. Arastraville Min. Co., 146 Cal. 219, Blinn v. Riggs, 110 Ill. App. 37; U.S. Steel Corporation v. Hodge, 64 N.J. Eq. 807, 60 L.R.A. 742."

In *Neff v. Twentieth Century Silk Corporation,* 312 Pa. 386, 167 A. 578, the board of directors consisted of five persons who were also officers. They voted to themselves as officers increased salaries which the Court found were fair and reasonable compensation

for the services which they rendered. No stockholders' meeting was held to ratify this action, but if it had been held the stockholders would have approved, *except* the minority stockholder. The Court dismissed the bill of the minority stockholder which charged a conspiracy to pay exorbitant salaries to the officers, and said that it was not material that all of the directors voted in favor of the resolution.

Courts are reluctant to interfere in the internal management of a corporation, since that is a matter for the discretion and judgment of the directors and stockholders, unless a minority stockholder's rights are jeopardized or injured by fraud or waste of company assets, or an overreaching, actual or legal: *Carr v. Carr O'Brien Company*, 386 Pa. 196, 203, 125 A. 2d 607; *Hornsby v. Lohmeyer*, 364 Pa. 271, 72 A. 2d 294; cf. *Maguire v. Osborne*, 384 Pa. 430, 447, 121 A. 2d 147; *Spang v. Wertz Engineering Co.*, 382 Pa. 48, 114 A. 2d 143; *Jones v. Costlow*, 349 Pa. 136, 36 A. 2d 460.

In *Spang v. Wertz Engineering Co.*, 382 Pa., supra, the Court said (page 50) : ". . . As was stated in Jones v. Costlow, 349 Pa. 136, 143, 'While the courts have some measure of supervision over the action of directors in fixing their own salaries as officers or for other services rendered, there should be no judicial interference in that regard unless fraud or overreaching appears . . .'"

In *Hornsby v. Lohmeyer*, 364 Pa., supra, the Court in dismissing the bill in equity of a *minority* stockholder, said (pages 274-275) : "The bill alleges that Lloyd O. Lohmeyer, President of the corporation, has been receiving, 15%, and William E. Grafe, Secretary and General Manager, 10%, of the net profits of the business, as well as bonuses, . . .; that these allowances were in addition to the regular salaries of those officers, . . .; that Lohmeyer has also received certain

commissions, amounting to approximately $3000 a year over a period of three years, in connection with sales to customers whom he personally handled. . . . The bill itself discloses that all these payments were authorized by the Board of Directors,— . . . the bonuses by resolutions in 1920 and 1929, . . .; moreover they have all been approved, ratified and confirmed [by a majority of the stockholders] at a meeting of the shareholders.* It is true, of course, that majority stockholders occupy a quasi-fiduciary relation toward the minority which prevents them from using their power in such a way as to exclude the minority from their proper share of the benefits accruing from the enterprise: Weisbecker v. Hosiery Patents, Inc., 356 Pa. 244, 250, 51 A. 2d 811, 813, 814. It is also true that directors may not vote to themselves or to the officers of the corporation compensation which is excessive, unreasonable and out of proportion to the value of the services rendered, and, if any such payments are made, the court, upon protest of a minority shareholder, may examine into their propriety and reduce them if found to be exorbitant. . . . *Certainly the payment of bonuses to the officers of a corporation is not in itself irregular or illegal; on the contrary it is quite usual* in the case of profitable business operations the success of which is attributable at least in part to the industry and ability of the management, and a court is not ordinarily warranted in substituting its own judgment as to the proper compensation of the officers for that of the directors whom the stockholders have chosen to manage the affairs of the corporation. Nor, in the absence of averments of facts indicating that such compensation is improper, does plaintiffs' bill gain additional weight by its occasional employment of the adjective 'fraudu-

---

* Held after suit had been brought.

lent'. In Bailey v. Bailey, 338 Pa. 221, 222, 12 A. 2d 577, 578, it was said that 'Because of the alluring generality of the term "fraud" there is a temptation to employ it indiscriminately, whereby it tends to degenerate into merely a trite epithet'. Merely alleging fraud as a legal conclusion adds nothing if it is not based upon facts clearly and explicitly set forth as constituting such fraud: Kepler v. Kepler, 330 Pa. 441, 445, 199 A. 198, 202; Compton, Receiver, v. Heilman, 331 Pa. 545, 550, 1 A. 2d 682, 684; Shinn v. Stemler, 163 Pa. Superior Ct. 363, 365, 61 A. 2d 777, 778."

Appellant contends that the payment of a bonus or additional salary to a corporate officer or director for *past* services is illegal even if ratified by a majority of the stockholders. For this proposition he cites the following cases: *Wilson v. Brown,* 269 Pa. 225, 112 A. 112 (1920) ; *Althouse v. Cobaugh Colliery Co.,* 227 Pa. 580, 76 A. 316 (1910) ; *Martindale v. Wilson-Cass Co.,* 134 Pa. 348, 19 A. 680 (1890); *Loan Association v. Stonemetz,* 29 Pa. 534 (1857) ; and *Bair & Gazzam Co. v. Vandersaal,* 36 Pa. Superior Ct. 615 (1908).

Except in *Loan Association v. Stonemetz,* 29 Pa., supra, the record does not disclose whether the stockholders ratified the salary payments in the above cited cases. If the aforesaid authorities stand for the proposition that the payment of a reasonable bonus or additional salary to a corporate officer for services during the current or the past (calendar or fiscal) year is illegal, even if ratified by a majority of the stockholders, they are no longer the law in Pennsylvania.

There has been a tremendous change in the last 25 years in corporate powers, acts and activities, and the law relating thereto. It has become a well recognized practice in the United States for corporations, sometimes by resolution at the commencement of a calendar or fiscal year, and sometimes by resolution near or

after the expiration of a calendar or fiscal year—when the corporation's financial condition is clearer—to approve the payment of bonuses for that current or prior year to certain officers and/or employees. Such resolutions of a board of directors, if passed at the expiration of a year or shortly after the expiration of a year, are voidable, not void. If the bonuses are, as in the instant case, for the current or prior calendar or fiscal year, and are fair and *reasonable,* and if they are thereafter approved by a majority of the stockholders, the courts will not declare them to be illegal. Cf. *Neff v. Twentieth Century Silk Corp.,* 312 Pa. 386, 167 A. 578; *Moore v. Keystone Macaroni Mfg. Co.,* 370 Pa. 172, 87 A. 2d 295; *Rogers v. Hill,* 289 U. S. 582. In Pennsylvania the general rule is now well established, subject to the limitations hereinabove set forth, that stockholders can ratify any action of the board of directors which they themselves could have lawfully authorized. Moreover, a very small or closed corporation is not held to the strict formalities that are applicable to large corporations, especially where the members of the board of directors personally conduct and actively direct the business: *Neff v. Twentieth Century Silk Corp.,* 312 Pa., supra; *Mickshaw v. Coca-Cola Bottling Co.,* 166 Pa. Superior Ct. 148, 70 A. 2d 467; 2 Fletcher on Corporations, §394.1.

Appellant also complains that defendants refused to give him a financial statement of the corporation until after advised to do so by their attorney. The reason for this failure was not a lack of good faith or an intentionally fraudulent act, but because in the spring of 1956 Chambers told them that he had sold his stock to a competitor who wanted Chambers to remain on the Board as its representative, and they naturally did not want to give confidential information about their company to a competitor.

We find no merit in any of appellant's contentions.
Decree affirmed at appellant's cost.

Mr. Chief Justice JONES concurs in the result.